Steven Brower (SBN 93568)
  Steve@BrowerLawGroup.com
Tae J. Im (SBN 139334)
  Tae@BrowerLawGroup.com
**BROWER LAW GROUP, APC**
100 Pacifica, Suite 160
Irvine, California 92618
Telephone: (949) 668-0825

*Attorneys for Plaintiff*
*Salem Media Group, Inc.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALEM MEDIA GROUP, INC.,<br><br>   Plaintiff,<br><br>   v.<br><br>ATLANTIC SPECIALTY INSURANCE COMPANY,<br><br>   Defendant. | Case No.<br><br>**COMPLAINT FOR:**<br>**1) DECLARATORY JUDGMENT;**<br>**2) BREACH OF CONTRACT;**<br>**3) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

## GENERAL ALLEGATIONS

**Jurisdiction and Parties**

1. Pursuant to Local Rule 8-1, requiring that the first paragraph set forth the basis for jurisdiction, this Court has subject matter jurisdiction over this case as a matter of diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that it is between citizens of different states and the amount in controversy exceeds $75,000, as more fully alleged herein.

2. Plaintiff Salem Media Group, Inc. ("Salem Media") is a corporation, organized and existing under the laws of the State of Delaware, with a principal place of business in the County of Ventura, State of California, which is within the Central District of California.

3. Salem Media is informed and believes, and therefore alleges, that Defendant Atlantic Specialty Insurance Company ("Atlantic Insurance"), is a corporation, organized and existing under the laws of the State of New York with a principal place of business in the State of Minnesota. Atlantic Insurance has elected to qualify to do business within the State of California since at least 2000, and Plaintiff is informed and believes that Atlantic Insurance has done business within the State of California continuously since that time. Atlantic Insurance is, for the purposes of this Complaint, an insurance company.

4. Venue is proper before this Court in that Atlantic Insurance sold and delivered the relevant policy of insurance to Salem Media in the County of Ventura, which is therefore the place of the contract, and Atlantic Insurance also breached the obligations thereunder within the County of Ventura, the place in which performance by payment of policy benefits was due, all as more fully set forth below.

**The Film 2000 Mules**

5. Salem Media is a multi-media company, the business of which includes, but it not limited to, radio broadcaster, Internet content provider, magazine publisher, book publisher and video/movie distributor.

6. Salem Media was and is the distributor for a film known as "2000 Mules" which was first released on or about May 20, 2022.

**Insurance Policy**

7. For many years prior to obtaining any policy of insurance from Atlantic Insurance, Salem Media, as a multi-media company, obtained many types of insurance coverage including, but not limited to, a "Mediaguard" policy from Federal Insurance Company, for the policy period March 1, 2022 to March 1, 2023, with a retention of $500,000 per claim and policy limits of $3 million per claim ("Chubb Policy"). That policy was intended to cover all of the media activities of

Salem Media including, but not limited to, the distribution of video content. Salem Media was specifically covered for "Media Activities" which includes:

    (A) any actual or alleged act, error or omission arising directly out of the gathering, recording, collection, writing, editing, publication, dissemination, exhibition, broadcast or release of Matter in connection with the Covered Media, including but not limited to any actual or alleged:

        (1) invasion or infringement of the right of privacy or publicity, including the torts of intrusion upon seclusion, publication of private facts, false light, or misappropriation of name or likeness;

        (2) libel, slander, or any other form of defamation or harm to the character or reputation of any person or entity, including product disparagement or trade libel;

        (3) outrage, infliction of emotional distress or prima facie tort;

        (4) false arrest, detention or imprisonment, harassment, trespass, wrongful entry or eviction, eavesdropping, or other invasion of the right of private occupancy;

        (5) copyright infringement or misappropriation of property rights, information or ideas or dilution or infringement of title, slogan, trademark, trade name, service mark, or service name;

        (6) negligence in connection with the content of Matter, including but not limited to any Claim alleging harm to a person or entity who acted or failed to act in reliance upon such Matter; or

    (B) any actual or alleged act, error or omission arising directly out of the development, creation, production, placement or dissemination of Matter consisting of or relating to advertising, publicizing, promotion or sale of the goods or services of the Insured or others where such Matter is in, or directly relating to, the Covered Media.

Covered Media, in turn, was defined as "All programming and publications produced or disseminated by the Insured and all radio stations owned and operated by the Insured; all advertising materials produced or disseminated by the Insured." And Matter was defined as "the content of any communication of any kind whatsoever, regardless of the nature or form of such Matter or the medium by which such Matter is communicated, including but not limited to language, data, facts, fiction, music, photographs, images, advertisements, artistic expression, or visual or graphical materials."

8.  Subsequent to the issuance of the Chubb Policy, Atlantic Insurance issued a contract of insurance entitled "Producer and Entertainment Advantage Policy," for the policy period of April 29, 2022 through April 29, 2023, with policy number MEP-27954-22, to Salem Media as the "named insured" ("Atlantic Policy").

9.  The Atlantic Policy's policy limit was $5,000,000 for each claim and in the aggregate, with a retention amount of $25,000. An actual copy of the contract between the parties is not attached hereto because the contract contains provisions which are confidential, and Atlantic Insurance, as the insurer which issued the policy of insurance, has access to the contract and is therefore fully aware of the terms and conditions of the Atlantic Policy. Salem Media will attach an appropriately redacted copy of the Atlantic Policy if required by the Court.

10.  The section entitled "Coverage Agreements" of the Atlantic Policy states, in part:

> **I.  COVERAGE AGREEMENTS**
>
> **(A)  Communications and Personal Injury Liability**
>
> The **underwriter** will pay on behalf of the **insured** any **loss** and **defense costs** in excess of the Retention and within the applicable Limit of Liability that the **insured** is legally obligated to pay to third parties because of liability imposed by law or

**assumed under contract** arising from an **occurrence** committed by the **insured** during the **policy period** that gives rise to a covered **claim**, including but not limited to a **claim** for:

(1) defamation, however styled in a **claim**, involving disparagement or harm to the character or reputation of any person or organization, including libel, slander, product disparagement or trade libel;

(2) invasion of or interference with the right of privacy or publicity, however styled in a **claim**, including eavesdropping, intrusion upon seclusion, false light invasion of privacy, public disclosure
of private facts and misappropriation of name or likeness;

(3) negligent or intentional infliction of emotional distress, outrage or outrageous conduct;

11. The term "claim" is defined in the Atlantic Policy, in part, as follows:

**(D)** **Claim** means:

(1) a judicial or alternative dispute resolution proceeding seeking monetary damages, services or injunctive relief against an **insured** for an **occurrence**;

(2) a written demand or notice received by an **insured** from any person or entity seeking to hold an **insured** responsible for an **occurrence**;

(3) a demand for the retraction or correction of **matter**; or

(4) a written request to toll or waive an applicable statute of limitations relating to a potential **claim** against an **insured**;

12. The term "insured" includes the "**named insured** and any **subsidiary**".

13. The term "subsidiary" is defined as follows:

**(T)** **Subsidiary** means any entity in existence on the Inception Date of this Policy in which the **named insured** owns, directly or through one or more **subsidiaries**, greater than fifty percent (50%) of the issued or outstanding voting securities.

14. The term "occurrence" is defined in Endorsement No. 3 to the Atlantic Policy as follows:

**Occurrence** means any actual or alleged act, error or omission committed by the **insured** arising directly out of:

(1) the release, distribution, licensing, sale, lease or exhibition of **scheduled media** or **advertising** produced by third parties pursuant to a distributor's agreement;

(2) the release, distribution, licensing, sale, lease or exhibition of the **insured's** previously released film library, if specifically scheduled in the Declarations as **scheduled media**; or

**(3)** **advertising** by or on behalf of the **insured;**

provided that any and all such acts, errors or omissions or series of acts, errors or omissions based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, decisions or events shall be deemed to constitute a single **occurrence**, regardless of the number of repetitions, versions or forms of such **occurrence**, and shall be deemed to have occurred on the date as determined in accordance with Section IV GENERAL CONDITIONS (C) of this Policy.

15. The declaration page of the Atlantic Policy states, in Item 3 "Scheduled Media" that the term means:

  Distribution of Library Title 2000 Mules that is owned or licensed by the Named Insured and previously insured.

16. The term "loss" is defined, in part, as follows:

**(H)** **Loss** means any monetary damages the **insured** is legally obligated to pay as a result of a **claim** covered by this Policy, including: actual damages; statutory damages; punitive, multiplied or exemplary damages if insurable under applicable law; pre-judgment and post-judgment interest; and plaintiff's attorneys' fees and costs included as part of a judgment. **Loss** shall not include:

17. The term "advertising" is defined in the Atlantic Policy as follows:

**(A)** **Advertising** means the content of **public appearance**, publicity, press releases or materials promoting the **scheduled media**, provided that **advertising** does not include: (1) one-on-one written or oral communications; (2) any lottery, sweepstakes, coupons, contests or games of chance, including but not limited to any redemption of any of the above; or (3) the design, print, images or information contained in or on the packaging or labeling of any goods or products.

18. The Atlantic Policy further indicates that Atlantic Insurance "has the right and duty to defend any covered **claim**, even if the allegations of such **claim** are groundless false or fraudulent."

19. Pursuant to the Atlantic Policy "defense costs" are included in the limits of liability.

20. Salem Media is informed and believes, and therefore alleges, that Atlantic Insurance drafted the Atlantic Policy without consultation with, or modification by, Salem Media, except to the extent, if any, that Atlantic Insurance might have offered, often for an additional premium, the option of adding other and

further provisions to the Atlantic Policy, which provisions were also drafted by Atlantic Insurance. As such, any ambiguity in the Atlantic Policy must be construed against Atlantic Insurance and in favor of coverage for Salem Media.

21. The obligations owed by Atlantic Insurance to Salem Media, under the Atlantic Policy, continue in full force and effect as of this date, subject to the terms and conditions thereof. Salem Media has complied with every obligation under the Atlantic Policy, except those which have been excused by the conduct of Atlantic Insurance, if any.

**The Andrews Claim**

22. On or about October 3, 2022, long after the issuance of the Atlantic Policy, counsel for Mark Andrews ("Mr. Andrews") sent a letter ("Andrews Letter") to Salem Media and others claiming that Andrews was defamed in the film entitled 2000 Mules, and its related advertising.

23. On October 26, 2022, a lawsuit was filed by Mr. Andrews against Salem Media and others in the United States District Court for the Northern District of Georgia, entitled *Andrews v. D'Souza, et al.*, Case No. 1:22-cv-04259-SDG ("Andrews Action").

24. Subsequently, a First Amended Complaint ("FAC") was filed in the Andrews Action on December 1, 2022. The FAC alleged the following seven counts: (1) conspiracy in violation of 42 U.S.C. § 1985(3); (2) violation of 52 U.S.C. § 10307(B); (3) defamation/defamation per se; (4) invasion of privacy by false light; (5) invasion of privacy by appropriation of likeness; (6) civil conspiracy; and (7) punitive damages.

25. The FAC alleges that the film 2000 Mules and its trailer featured video footage of Mr. Andrews, and "falsely describe the video as depicting Mr. Andrews committing crimes." (The claims alleged in the Andrews Letter, and in the Andrews Action are hereinafter referred to as the "Andrews Claim".)

**Atlantic Insurance's Denial of Coverage for Andrews Claim**

26. Salem Media timely tendered the Andrews Letter and Andrews Claim to Atlantic Insurance pursuant to the terms of the Atlantic Policy.

27. Salem Media is informed and believes that Atlantic Insurance did not request any other information from Salem Media prior to sending a response stating that Atlantic Insurance had concluded that there is no coverage for the claims set forth in the Andrews Letter and Andrews Action.

28. Specifically, by letter dated December 15, 2022 ("Denial Letter"), Emily R. Caron ("Ms. Caron"), a Vice-President, Media Liability Claims, for Atlantic Insurance responded to the tender of the Andrews Claim by Salem Media.

29. Salem Media is informed and believes, based on information obtained from the State of Kansas and from the State Bar of California, that Ms. Caron is licensed to practice law in Connecticut but is not licensed to practice law in California.

30. Salem Media is informed and believes, and therefore alleges, that Atlantic Insurance assigned responsibility for handling of the insurance claim for the Andrew Claims to Ms. Caron for the Atlantic Policy. Salem Media is informed and believes, and therefore alleges, that the matter was assigned to Ms. Caron because she was the most experienced claims handlers for media liability claims, and because she was familiar with California law as it applied to interpretation of insurance policies, and because she had the knowledge and experience to make strategic decisions regarding coverage, and because she had the authority to act on behalf of Atlantic Insurance in confirming or denying coverage and because they had the ability to fully and clearly communicate such coverage decisions for the strategic benefit of Atlantic Insurance and to know that she was intentionally waiving certain items by her strategic decisions.

31. Salem Media is informed and believes, and therefore alleges, that Atlantic Insurance considered all facts, evidence and other information which it

believed was necessary and appropriate to make a full coverage determination. Salem Media is further informed and believes, and therefore alleges, that Atlantic Insurance obtained full and complete cooperation from Salem Media in that Salem Media was ready, willing and able to respond to any requests for documents and/or requests for access to individuals who would have additional information which might be relevant to the coverage investigation. Atlantic Insurance did not request any further information from Salem Media, prior to issuing its coverage decision, because Atlantic Insurance made a determination that it already had all the evidence which it believed it needed to make a legally binding coverage decision, including its decision to waive any matters which were not fully investigated or which were represented in a certain manner.

32. The Denial Letter cited "Endorsement No. 5 amending Exclusion M of your policy, which excludes **claims**: (M) based upon or arising out of: (1) an **occurrence** that was first committed before the Inception Date of the Policy set forth in ITEM 2(a) of the Declarations…".

33. Atlantic Insurance relied on this exclusion based on the fact "the First Amended Complaint alleges multiple instances of dissemination of **matter** and/or **advertising** prior to the inception date of the policy, as early as April 8, 2022."

34. The Denial Letter then cited to Item 2 of the Declarations of the Atlantic Policy, which sets forth the Scheduled Media for this policy:

Distribution of Library Title 2000 Mules that is owned or licensed by
the Named Insured and previously insured.

Atlantic Insurance contended that it could deny coverage because there was no previous insurance coverage for 2000 Mules, without making any reference to the Chubb Policy.

35. Atlantic Insurance's denial of coverage was wrongful in that Exclusion M of the Atlantic Policy was not applicable because the definition of "occurrence", as modified by Endorsement No. 3, was limited to "advertising"

"produced by third parties pursuant to a distributor's agreement", or "advertising" "by or on behalf of the **insured**". Therefore, the alleged "advertising" before April 29, 2022, was not an "occurrence" that took place before the policy period.

36. Salem Media's interpretation comports with the reasonable expectations of Salem Media that coverage could not be eliminated because of the pre-policy "advertising" done by third-parties for which Salem Media, as the film distributor, was not responsible.

37. Atlantic Insurance's denial of coverage was also wrongful in that Atlantic Insurance tried to eliminate coverage based on the early dissemination of "matter", ignoring the fact that "occurrence" was defined by Endorsement No. 3 to only cover the "release, distribution, licensing sale, lease or exhibition of scheduled media" and specified "advertising".

38. Salem Media had a reasonable expectation that Salem Media's coverage under the Atlantic Policy could not be eliminated because snippets of the film 2000 Mules were released early by third-parties for which Salem Media was not responsible before the entire film was released for exhibition.

39. By its wrongful denial of coverage, Atlantic Insurance has breached the contract represented by the Atlantic Policy. Upon such breach Salem Media was relieved of any further obligation to provide notice to Atlantic Insurance or to otherwise comply with most of the terms and conditions within the Atlantic Policy.

40. Pursuant to California Insurance Code section 790.03(h), it is unlawful for an insurer to: (2) fail to acknowledge and act promptly upon tender of a claim; (3) fail to adopt and implement reasonable standards for prompt investigation and processing of claims; (6) compel insureds, such as Salem Media, to institute litigation to recover amounts due; and (13) fail to promptly provide a reasonable explanation for any denial of coverage.

41. Subsequent to the denial of coverage, by Atlantic Insurance, Salem Media and Regnery, after incurring a significant amount of defense costs, settled

the Andrews Claim for a significant [confidential] amount, with Federal Insurance Company ("Chubb"), which issued a media liability policy to Salem Media as the named insured, agreeing to pay only a portion of the settlement and attorney's fees and costs incurred by Salem Media and Regnery in the Andrews Action, all of which was subject to a $500,000 retention under Chubb's policy. Therefore, Salem Media has been damaged by a significant [confidential] amount.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT

42. Salem Media realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 41 of this Complaint.

43. Salem Media has incurred costs of defense and settlement costs in relation to the Andrew Claim, not reimbursed by Chubb, which should properly be reimbursed by Atlantic Insurance, and such costs should be paid pursuant to the limits of the Atlantic Policy.

44. Atlantic Insurance has stated that there is no coverage for the Andrew Claims and has failed and refused to pay for the costs of defense and settlement reasonably and necessarily incurred by Salem Media.

45. There is an actual and present controversy between Salem Media and Atlantic Insurance regarding the extent of the obligations of Atlantic Insurance under the terms of the Atlantic Policy, such that this Court should issue a declaratory judgment in favor of Salem Media, and against Atlantic Insurance, finding that there is, at a minimum, a duty to reimburse Salem Media for the unreimbursed costs of defense and settlement costs for the Andrew Claim.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

46. Salem Media realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 41 of this Complaint.

47. On or about December 15, 2022, and thereafter, Atlantic Insurance breached the Atlantic Policy by failing and refusing, and continuing to fail and refuse, to defend Salem Media against the Andrew Claim, and to settle the Andrew Claim.

48. Salem Media has been damaged in the amount of unreimbursed defense costs and settlement costs which it incurred in the course of responding to and settling the Andrew Claim.

49. Salem Media has also been foreseeably damaged by other consequential damages which it has incurred as described herein, and subject to proof.

50. Salem Media does not know the precise amount thereof, but Salem Media is informed and believes, based on defense costs already incurred, and therefore alleges, that the total amount in dispute will be in excess of $75,000 above and beyond the retention amount.

### THIRD CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

51. Salem Media realleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 41 of this Complaint.

52. Atlantic Insurance was obligated to and must pay for defense costs and settlement costs incurred by Salem Media with respect to the Andrew Claim.

53. The denial of coverage by Atlantic Insurance was unreasonable because the reasons stated did not preclude coverage and therefore did not preclude a duty to defend. Atlantic Insurance's conduct in asserting that there was no coverage therefore constitutes a tortious breach of the covenant of good faith and fair dealing.

54. As a result of the breaches by Atlantic Insurance, Salem Media has incurred substantial financial obligations to pay amounts for defense and settlement

costs which amounts are properly covered under the Atlantic Policy. Salem Media also contends that Salem Media is entitled to the payment of interest from the date on which Atlantic Insurance should have reimbursed Salem Media.

55. As a further proximate result of the breaches by Atlantic Insurance, Salem Media has been required to expend attorney's fees and costs for experienced insurance coverage litigation counsel to obtain the insurance policy benefits to which it was entitled under the Atlantic Policy. Pursuant to the principles of *Brandt v. Superior Court*, Salem Media is entitled to reimbursement of such amounts from Atlantic Insurance. Salem Media is informed and believes, and therefore alleges, that the reasonable value of such damages, which will continue through the trial in this matter, will exceed the jurisdictional minimum of this Court.

56. The conduct of Atlantic Insurance in denying coverage based on a single exclusion which does not bar a duty to defend, and which was undertaken without a proper legal and/or factual basis, is contrary to the applicable legal principles, and is therefore conduct which is fraudulent, malicious or which, at a minimum, evidences a conscious disregard for the rights of Salem Media. Moreover, Salem Media is informed and believes, and therefore alleges, that such conduct is the regular business practice of Atlantic Insurance and has been utilized against other parties insured by Atlantic Insurance. Atlantic Insurance should therefore be required to pay punitive damages for the purpose of attempting to deter future unlawful conduct by them in an amount subject to determination by the trier of fact.

WHEREFORE, Salem Media prays for judgment as follows:

ON THE FIRST Cause of Action:

1. For a Declaratory Judgment in favor of Salem Media and against Atlantic Insurance on every issue properly brought before this Court.

2. Such other and further Declaratory Judgment as may appear proper at the time of determination.

ON THE SECOND Cause of Action:

3. For all unreimbursed defense costs and settlement costs incurred by Salem Media which amounts are properly covered under the Atlantic Policy, which amount will be in excess of $75,000.

4. For interest on sums which were not timely paid to Salem Media.

5. For all other damages incurred by Salem Media as a result of any breach of contract.

ON THE THIRD Cause of Action:

6. For attorney's fees and costs incurred in this matter pursuant to the principles of *Brandt v. Superior Court*.

7. For punitive damages, subject to proof.

ON ALL Causes of Action:

8. For interest on all sums where properly owed.

9. For costs of suit incurred herein.

10. For such other and further relief as the court may deem just.

DATED: May 30, 2024               BROWER LAW GROUP, APC


By: /s/ Steven Brower
    Steven Brower

Attorneys for Plaintiff Salem Media Group, Inc.

## **DEMAND FOR JURY TRIAL**

Salem Media hereby demands a trial by jury as to each claim and/or issue as to which it is so entitled.

DATED: May 30, 2024          BROWER LAW GROUP, APC

By: /s/ Steven Brower
    Steven Brower

Attorneys for Plaintiff Salem Media Group, Inc.